# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES A. WALKER,** | : | **CIVIL NO. 4:10-CV-467** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KATHY ELLIOTT, et al.,** | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by James Walker, a man who was formerly charged in the Court of Common Pleas of Mifflin County with receiving stolen property and driving under the influence of alcohol. (Doc. 11.) Walker's current civil rights complaint arises out of this state prosecution, which concluded in January 2009 with the dismissal of these state charges.

According to the well-pleaded facts set forth in his amended complaint, on March 3, 2008 Walker was arrested by two Pennsylvania State troopers, Jason Holland and Timothy Marrone, and was charged with receiving stolen property and driving under the influence of alcohol. (Id.) When Walker was unable to post bail, he was taken into custody and held at the Mifflin County Prison while his case proceeded to court. (Id.) Throughout these court proceedings, Walker, who was indigent, was represented by one of two court-appointed counsel.

Walker's amended *pro se* complaint then describes a contentious 11 month course of judicial proceedings in this state criminal case. These bitterly disputed proceedings included a preliminary hearing in which a magisterial district judge found probable cause and bound his case over for trial, as well as suppression hearings which ultimately led to the suppression of evidence, and dismissal of these state charges in January, 2009. (Id.)

According to his amended complaint, in the course of these state criminal proceedings, Walker leveled accusations against virtually all participants in this legal process, accusing his own lawyers of incompetence, alleging that witnesses and police testified falsely, claiming that courthouse staff were impeding his defense and asserting that various judges were biased against him. (Id.) With the dismissal of this case, these accusations, which defined Walker's criminal defense, now form the basis for his civil cause of action.

In its current form, Walker's 62-page amended complaint advances two basic claims and causes of action against two different sets of defendants[1]. First, Walker levels claims against Troopers Holland and Marrone, alleging that they violated his civil rights by falsely accusing and imprisoning him on these state charges. (Doc. 11.)

_____

[1]Originally, Walker's complaint also contained a third cause of action against the magisterial district judge who conducted his preliminary hearing. That claim has now been dismissed by this Court. (Doc. 35.)

In addition, Walker's amended complaint contains a series of allegations against seven other defendants: Mifflin County; Bernie Zook, the county prison warden; James Crisswell, the deputy warden at the county prison; Kathy Elliott, a prison clerical employee; and the prothonotary/clerk of court for Mifflin County, Patti Burke, along with two members of her staff, Sue Hummel and Tammy Stuck. (<u>Id.</u>)

Broadly construed, with respect to these defendants Walker's claim is that the defendants conspired to deny him access to the courts. (<u>Id.</u>) However, beyond this broad legal label, the facts set forth in Walker's complaint simply detail a history of persistent written demands by Walker from prison for information from county officials concerning his case, coupled with repeated replies from these officials, many of which pointed out to Walker that he was represented by counsel and encouraged him to speak with his attorney concerning his case. (<u>Id.</u>) Indeed, attached to Walker's complaint are copies of 19 written request forms which the plaintiff submitted to corrections and court staff between September 2008 and January of 2009, asking for court records, information and status updates concerning his legal proceedings and other matters. (<u>Id.</u>) These 19 forms may actually overstate the extent of this contact between Walker and the defendants since many of these forms appear to be duplicate requests, and the requests appear to often follow each other in rapid succession, with Walker sending multiple requests to local officials on the same topic in the span of a few days. (<u>Id.</u>)

The exhibits attached to Walker's complaint also show that local officials consistently responded to Walker's requests, granting some of the requests and reporting in other instances that documents which Walker sought could not be provided immediately because various court files were in chambers and unavailable.(Id.) Moreover, these responses frequently encouraged Walker, who was represented by court-appointed counsel, to work with his attorney to obtain these records and information. (Id.) Some of these responses are signed by defendant Elliott, other are unsigned. According to Walker's amended complaint, at some time during this process he became suspicious that defendant Elliott was forging replies on behalf of the clerk's office. (Id.) Walker voiced this concern to Warden Zook, who looked into this matter, and reported back to Walker that there was no basis for his accusation. (Id.) It is on the basis of this exchange of communications between Walker, who was then a pre-trial detainee represented by counsel in a pending criminal case, and local prison and courthouse staff that Walker now asserts that his constitutional right of access to the courts was denied.

Mifflin County and these various county defendants have now moved to dismiss this complaint (Doc. 28), arguing that the complaint, which shows that Walker had full access to the courts through court appointed counsel, fails to state a claim upon which relief can be granted. (Doc. 29.) This motion to dismiss has been fully briefed by the

parties, (Docs. 29, 32) and is ripe for resolution. For the reasons set forth below, it is recommended that the motion to dismiss be granted.

## II.   Discussion

### A.   Rule 12(b)(6)– The Legal Standard.

The Mifflin County defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this

analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint states a viable cause of action.

> **B.    Walker's Complaint Fails to State a Claim of Denial of Access to the Courts Since It Reveals That Walker Had Full Access to the Courts Through His Court-Appointed Counsel**

Liberally construed, the gravamen of Walker's complaint with respect to the Mifflin County defendants is that these defendants in some fashion denied him his right of access to the courts while these state charges were pending against him and he was held as a pre-trial detainee in the Mifflin County Prison. Walker advances this denial-of-access-to-the-courts claim on a unique set of facts. Those facts reveal that Walker was represented by court-appointed counsel throughout virtually the entire time that these proceedings were pending against him, and thus had access to the courts though his counsel throughout these state proceedings.[2]

Thus, Walker's complaint calls upon us in the first instance to consider the contours of the constitutional right of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials

---

[2]Indeed, with the exception of a seven day period from October 28 through November 4, 2008, court records confirm that Walker was represented by one of two attorneys throughout these proceedings.  (Doc. 29.)

facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following Lewis courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. See, e.g., Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v. Buskirk, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).

Moreover, consistent with the Supreme Court's express view that " 'we encourage local experimentation' in various methods of assuring access to the courts," Lewis v. Casey, 518 U.S. at 352, courts have long recognized that public officials can provide meaningful access to the courts through a wide variety of means, including the appointment of counsel, a measure which was taken here. Thus, "[w]here a prisoner is provided an attorney by the state to represent him . . ., the prisoner's right to access to the courts is vindicated.  Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir.1988)." Cook v. Boyd, 881 F.Supp. 171, 176 (E.D.Pa.1995). Recognizing the discretion conferred to public officials in this field, it has been held that:

> The right of access to courts extends to pretrial detainees, such as plaintiff, as well as to convicted prisoners. [citations omitted] However, pretrial detainees are often in a different situation, in that they normally have appointed counsel representing them with respect to their pending criminal charges. A pretrial detainee's access to court appointed counsel

satisfies his right to meaningful access to the courts. See Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir.1988) (construing *"Bounds* to hold that the provision of lawyers is one means by which a state may provide prisoners with meaningful access to courts"); Bourdon v. Loughren, 386 F.3d 88 (2d Cir.2004) (appointment of counsel can be a valid means of fully satisfying constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts); United States v. Smith, 907 F.2d 42, 45 (6th Cir.1990) ("the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves" and waive their right to counsel); Howland v. Kilquist, 833 F.2d 639, 643 (7th Cir.1987) ( "trial court's offer of appointment of counsel in [the criminal] proceedings, and the appointment of standby counsel, satisfied any obligation which the state had to provide [the inmate] with legal assistance"); Love v. Summit County, 776 F.2d 908, 914 (10th Cir.1985) (where detainee had access to his counsel at all times during his incarceration, he "did not show that he was denied access to adequate legal assistance to help him prepare and pursue his claims before the courts or that defendants in any significant way restricted that access"); Smith v. County of Santa Clara, 223 F. App'x 701 (9th Cir.2007) (not published) (pretrial detainee's access to court-appointed counsel satisfied right to meaningful access to the courts, even if the law library available to him in the county jail was inadequate).

Hester v. Morgan, No. 10-309, 2010 WL 3907770, *2 (D.Del.Sept. 29, 2010). Accordingly, courts have repeatedly held that access-to-court claims like those advanced here by Walker fail as a matter of law when it is shown that the plaintiff had the assistance of court-appointed counsel. See, e.g., Tinsley v. Del Rosso, No. 08-1251, 2008 WL 2236598 (D.N.J. May 30, 2008); Tormasi v. Hayman, No. 07-5683, 2008 WL 1995125 (D.N.J. May 6, 2008); Annis v. Fayette County Jail, No. 07-1628, 2008 WL 763735 (W.D. Pa. March 20, 2008); Hunter v. Shoupe, No. 06-1023, 2007

WL 120030 (W.D. Pa. Jan. 10, 2007); <u>United States ex rel. Russell v. Hendrick</u>, 376 F.Supp. 158 (E.D.Pa. 1974).

These principles are directly applicable here, and are fatal to Walker's claim that he was denied access to the courts during the course of this exchange of messages with court and prison staff from September 2008 through January 2009. Throughout this period, Walker was represented by court-appointed counsel, a measure which fully vindicated his right of access to the courts. Furthermore, Walker was advised on several occasions by the defendants to work with his court-appointed counsel to obtain answers to his legal questions. Ultimately, Walker worked with his counsel to secure suppression of the evidence seized by police, and dismissal of these charges. On these facts–where it is undisputed that Walker was represented by counsel, had his rights fully protected, and Walker can show no unfair prejudice stemming from his dispute over the authorship of the various notes replying to his requests and urging him to work with his counsel–his access-to-the-courts claim fails as a matter of law.

## C.   <u>Walker's Claims Against Clerk's Office Staff and Supervisory Prison Defendants Also Fail</u>

Entirely aside from this fundamental defect, Walker's complaint is flawed in several other respects. The gravamen of Walker's complaint is his allegation that one prison employee, Kathy Elliott, may have authored replies to his requests to the clerk

of court for various court records. Yet, Walker's complaint names not only Elliott as a defendant, but also her supervisors, Warden Zook and Deputy Warden Crisswell. These defendants are apparently named in this action because they investigated, but did not credit, Walker's complaints that Elliott had replied to some of his notes addressed to the clerk of court. Walker then goes on to name the clerk of court, Patti Burke, along with two members of her staff, Sue Hummel and Tammy Stuck, as additional defendants. These individuals are named in this case apparently because Walker does not credit their claims that they actually did respond to his notes seeking case status information from the clerk's office.

With respect to all of these defendants, Walker's complaint first fails because it violates the pleadings rules prescribed by the United States Supreme Court in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009) in that it only contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. In fact, as to the employees and supervisors in the clerk of courts office, Patti Burke, Sue Hummel and Tammy Stuck, the complaint does not even contain "[t]hreadbare recitals of the elements of a cause of action". Rather, Walker's stated basis for holding these persons personally liable is his wholly speculative assertion that they did not respond to notes that he sent them, but then falsely claimed that they did reply to him. (Doc. 11.) Whatever the merits of

-13-

this dispute might be as a factual matter, these assertions do not describe a deprivation of the right of access to the courts for Walker, who was represented by counsel throughout this state criminal case. This complete failure to articulate in the complaint a basis for holding these clerk's office staff accountable for some violation of the constitution now compels dismissal of these defendants from this lawsuit. See Thomas v. Conway, No. 04-1137, 2005 WL 2030304 (M.D. Pa. July 21, 2005)(failure to name defendant in body of complaint compels dismissal).[3]

_____

[3] Walker's claim against the clerk's office staff also fails because the United States Supreme Court has long recognized that officials performing judicial and quasi-judicial, functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991)are entitled to immunity from personal liability for actions they take in our adversarial system of justice. The scope of these protections extend beyond judges to those who take discretionary actions at the direction of the courts. As this court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is

-14-

Moreover, with respect to the prison supervisors named in his amended complaint, Warden Zook and Deputy Warden Crisswell, none of the grounds proffered by Walker in support of this complaint justify holding these particular defendants personally liable for the alleged constitutional violations set forth in the complaint. At the outset, liability cannot rest here based upon the mere fact that these defendants supervised Elliott. It is well-settled that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d

---

available to those individuals, . . ., who perform functions closely associated with the judicial process. <u>Marcedes v. Barrett</u>, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); <u>Henig v. Odorioso</u>, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); <u>Davis v. Philadelphia County</u>, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

<u>Stout v. Naus</u>, No. 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for quasi-judicial officials directly apply here and would also prevent the plaintiff from maintaining this civil action for damages against the individual clerk's office defendants he has named in his complaint

902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Liability under §

1983 is personal in nature and can only follow personal involvement in the alleged

wrongful conduct shown through specific allegations of personal direction or of actual

knowledge and acquiescence in the challenged practice. Robinson v. City of

Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action
> must have personal involvement in the alleged wrongdoing;
> liability cannot be predicated solely on the operation of respondeat
> superior. Personal involvement can be shown through allegations
> of personal direction or of actual knowledge and acquiescence."
> Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the United States Supreme Court has observed in underscoring this principle:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior.*
> Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a
> plaintiff must plead that each Government-official defendant, through the
> official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Thus, Walker may not maintain this action against defendants Zook and

Crisswell merely based upon their supervisory status at the prison.

Nor can Walker sustain this claim against these supervisory correctional officials by simply pointing to the actions taken by these officials on various grievances which he filed while in prison. It is well-settled that inmates do not have a constitutional right to a prison grievance system. See Speight v. Sims, No. 08-2038, 283 Fed. Appx. 880, 2008 WL 2600723 at *1 (3d. Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with the response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). This principle applies with particular force to complaints like those made by Walker in his grievances. In a case such as this, where the grieving inmate's complaints involve claims that prison staff are interfering with his access to the courts in some way, it has been held that the failure of prison supervisors to agree with the inmate's

claims, standing alone, simply does not rise to the level of a constitutional infraction. Diaz v. Palakovich, No. No. 07-2190, 2009 WL 811712 (M.D.Pa. March 26, 2009).

Thus, entirely aside from the fundamental flaws which undermine this entire access-to-courts claim, Walker's allegations with respect to defendants Zook, Crisswell, Burke, Hummel and Stuck fail because these allegations do not " raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Therefore, it is recommended that these defendants be dismissed from this action since Walker has failed to allege well-pleaded facts justifying personal liability as to any of these individuals.

### D.  Walker's Amended Complaint Fails to State a Claim Against Mifflin County

In addition to these individual defendants, Walker has also named Mifflin County as a defendant in this lawsuit. Walker's claims against Mifflin County warrant only brief consideration. Walker faces an high burden when advancing a civil rights claim against an entity like Mifflin County. It is clear that a county cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. See Monell v. Department of Social Servs., 436 U.S. 658, 691 (1978). Instead, with respect to such institutional defendants it is clear that: "[a plaintiff] must demonstrate that the violation of his rights was caused by either a policy or a custom of the [county]. See Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.1996)." Berg

v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000). See Malles v. Lehigh

County, , 639 F. Supp.2d 566 (E.D. Pa. 2009) As the Malles Court stated:

> According to the teaching of Monell v. Department of Social Services,
> 436 U.S. 658(1978), [a] County "can be sued directly under § 1983 ...
> [only when] the action that is alleged to be unconstitutional implements
> or executes a policy statement, ordinance, regulation, or decision
> officially adopted and promulgated by [the County's] officers" or where
> the constitutional deprivations occurred pursuant to governmental
> custom. Monell, 436 U.S. at 690.

Id. at 576.

In this case, Walker has not alleged any unconstitutional custom or practice on

behalf of the county, nor can he.  Quite the contrary, the only county custom or

practice revealed in Walker's complaint is the practice of appointing counsel for

indigent criminal defendants like Walker, a practice which complies with

constitutional dictates and fully vindicates the prisoner's right of access to the courts.

Since Walker has not, and cannot, show any custom or practice of the county which

violated his constitutional rights, his claims against the county must fail.

### E.     Walker's Requests for Injunctive and Declaratory Relief Are Moot

Finally, the Defendants have moved to dismiss Plaintiff's claims for prospective

injunctive relief as moot, noting that Walker was released from prison in January

2009. Upon consideration, we agree with the Defendants that the Plaintiff's removal

from the Mifflin County Prison renders his claim for injunctive relief moot, and this

claim should be dismissed. In general, an inmate-plaintiff's transfer to another prison, or his release, moots a request for declaratory or injunctive relief. See, e.g., Bronson v. Overton, Civ. A. No. 08-52E, 2010 U.S. Dist. LEXIS 60003, at *1 n.1 (E.D. Pa. May 27, 2010); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief."). Nothing in the record suggests that the Plaintiff is likely to return to the Mifflin County Prison in the foreseeable future, and we thus find that his claims for injunctive relief are moot and should be dismissed.

### F.   Conclusion

Notably, Walker has not contested any of the defenses raised by the Mifflin County defendants as a legal matter in his response to this motion to dismiss. (Doc. 31.) Instead, Walker simply invites the Court to deny this motion, allow him to pursue discovery in support of these speculative claims, and then determine himself at the end of the discovery whether he has any arguably meritorious claims to advance. (Id.)

We will decline this invitation, which misconstrues the rules of pleading in federal court, and the legal standards which govern motions to dismiss. It is now evident that in order to bring an action, a plaintiff "must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 210-11. Therefore, a plaintiff cannot resist a motion to

dismiss a complaint by arguing, as Walker does, that he needs discovery to find out whether he can actually state a valid cause of action. Indeed, the short answer to this proposition is that it has been frequently rebuffed by the courts. As the United States Court of Appeals for the Third Circuit aptly observed when it rejected a similar assertion by another plaintiff:

> [N]one of [the plaintiff's] claims entitle him to relief. That, as [the plaintiff] contends, he could have produced "a litany of facts" substantiating his claims . . ., if he had more time to conduct discovery, misses the mark. See Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir.2007) (because plaintiffs' complaint failed to state a claim for relief, "it follows that the district court did not err in granting defendants' Rule 12(b)(6) motion before permitting discovery by plaintiffs"). A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development. See Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (the purpose of Rule 12(b)(6) is to "streamline[ ] litigation by dispensing with needless discovery and factfinding"); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir.1997) ("A motion to dismiss based on failure to state a claim for relief should ... be resolved before discovery begins."); Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir.1987) (the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense [because t]he purpose of F.R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery")

Mann v. Brenner, 375 F. App'x 232, 239 (3d Cir. 2010).

Since Walker's access-to-the-courts claim fails based upon the immutable fact that he had access to the courts through his court-appointed counsel, no amount of discovery would enable the plaintiff to resist this motion to dismiss. Therefore, the

plaintiff's suggestion that we should deny this motion, while he indulges in such discovery, must be rejected.

In short, without the inclusion of some further well-pleaded factual allegations, the constitutional claims set forth in this civil rights complaint contain little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft v. Iqbal, 127 S.Ct. at 1979. Therefore we are compelled to recommend dismissal of this complaint. We recognize that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case we provided Walker with an opportunity to amend his complaint, but to no avail. Since the plaintiff has failed to state a viable cause of action, and the factual and legal grounds proffered here in support of the complaint make it clear that the plaintiff has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore this case should simply be dismissed.

## III.  RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Mifflin County defendants' motion to dismiss (Doc. 28) be GRANTED, and the Plaintiff's Motion to Keep Defendants from Dismissal Prior to Depositions (Doc. 31) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified   proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 15th  day of October, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
