IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES A. WALKER, | : | CIVIL NO. 4:10-CV-467 |
| Plaintiff, | : | (Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| KATHY ELLIOTT, et al., | : | |
| Defendants, | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by James Walker, a man who was formerly charged in the Court of Common Pleas of Mifflin County with receiving stolen property and driving under the influence of alcohol. (Doc. 11.) Walker's current civil rights complaint arises out of this state prosecution, which concluded in January, 2009, with the dismissal of these state charges.

According to the well-pleaded facts set forth in his amended complaint, on March 3, 2008, Walker was arrested by two Pennsylvania State troopers, Jason Holland and Timothy Marrone, and was charged with receiving stolen property and driving under the influence of alcohol. (Id.) When Walker was unable to post bail, he was taken into custody and held at the Mifflin County Prison while his case proceeded to court. (Id.) Throughout these court proceedings, Walker, who was indigent, was represented by one of two court-appointed counsel.

Walker's amended *pro se* complaint then describes a contentious 11-month course of judicial proceedings in this state criminal case. These bitterly disputed proceedings included a preliminary hearing in which a magisterial district judge found probable cause and bound his case over for trial, as well as suppression hearings which ultimately led to the suppression of evidence, and dismissal of these state charges in January, 2009. (Id.)

According to his amended complaint, in the course of these state criminal proceedings, Walker leveled accusations against virtually all participants in this legal process, accusing his own lawyers of incompetence, alleging that witnesses and police testified falsely, claiming that courthouse staff were impeding his defense and asserting that various judges were biased against him. (Id.) With the dismissal of this case, these accusations, which defined Walker's criminal defense, now form the basis for his civil cause of action.

In its current form, Walker's 62-page amended complaint advances two basic claims and causes of action against two different sets of Defendants[1]. First, Walker's amended complaint contains a series of allegations against seven Defendants: Mifflin County; Bernie Zook, the county prison warden; James Crisswell, the deputy warden

---

[1] Originally, Walker's complaint also contained a third cause of action against the magisterial district judge who conducted his preliminary hearing. That claim has now been dismissed by this Court. (Doc. 35.)

at the county prison; Kathy Elliott, a prison clerical employee; and the prothonotary/clerk of court for Mifflin County, Patti Burke, along with two members of her staff, Sue Hummel and Tammy Stuck. (Id.) These allegations are the subject of a motion to dismiss filed on behalf of these Defendants, (Doc. 28) as to which we have filed a report and recommendation. (Doc. 36).

In addition, in his amended complaint Walker levels claims against Troopers Holland and Marrone, (hereafter "State Police Defendants"), alleging that they violated his civil rights by falsely accusing and imprisoning him on these state charges. (Doc. 11.) The State Police Defendants have, in turn, filed a motion to dismiss, or stay, this action. The motion to dismiss challenges the legal sufficiency of Walker's amended complaint. The request for stay notes that Defendant Holland has been deployed overseas on military duty and seeks a stay of these proceedings while the Defendant performs this national service. This motion to dismiss has been fully briefed by the parties, (Docs. 25, 30, 31, and 33) and is ripe for resolution.

In reviewing this motion, and Walker's complaint, we note that both the complaint, and the motion to dismiss, attempt to characterize the 11-month criminal prosecution of Walker by states authorities, a prosecution that concluded with the dismissal of these charges. Towards that end, both the Plaintiff and the Defendants have attached various excerpts from court records, and transcripts of court proceedings, to their pleadings, while asserting contrasting positions regarding the

conduct of this criminal case, the legal sufficiency of this amended complaint, and the Defendants' entitlement to qualified immunity.[2]

Upon consideration of the complaint, and motion to dismiss, we conclude that both parties are urging the Court to take cognizance of extensive facts outside the pleadings themselves, which in our view is not an appropriate course to follow when ruling upon a motion to dismiss. Thus, an assessment of the legal viability of this civil rights case, which calls for an examination of the underlying factual background of the state criminal prosecution, should not be undertaken in the context of a motion to dismiss under Rule 12(b)(6), but rather, should only be pursued through a summary judgment motion under Rule 56.

Accordingly for the reasons set forth below, it is recommended as follows:

(1) that the motion to dismiss should be denied;

---

[2]The parties' submissions candidly leave us with more questions than answers regarding the background of this state criminal case. On one hand, it appears that the Defendant was arrested in March 2008, a search warrant was issued in this case, and the case was bound over for court after a preliminary hearing, events which seem to reflect probable cause to believe that some of the crimes alleged had occurred. However, the record excerpts also reveal that some or all of the evidence against Walker was later suppressed by the state court, and the Commonwealth then dismissed the case, events which cast some cloud over this prosecution. Suffice it to say we are unable factually to assess these questions on the limited record before us, and are forbidden legally from engaging in this type of inquiry outside the pleadings when assessing a motion to dismiss.

(2) that the Defendants should be directed to pursue any legal claims grounded in an assertion of qualified immunity through a properly documented motion for summary judgment filed within the next 60 days; and

(3) other than litigation of any summary judgment motion, the case should be stayed as the State Police Defendants pending completion of the overseas deployment of Defendant Holland.

## II. Discussion

### A. Motions to Dismiss and For Summary Judgment–The Contrasting Legal Standards.

This case, which comes before the Court on a motion to dismiss, presents an illustration of the differing legal standards that apply to potentially dispositive motions in federal court. Here, the State Police Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering a Rule 12(b)(6) motion which alleges that a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to

raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the

factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

However, when addressing a motion to dismiss under Rule 12(b)(6) the court's discretion is generally confined to a consideration of the well-pleaded allegations in the complaint. The only exceptions to this rule limiting a motion to dismiss to consideration of the pleadings themselves are narrowly defined by the courts, permitting courts: (1) to "consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record ", Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted); and (2) allowing that: "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (citations omitted).

In contrast, parties may challenge the sufficiency of a claim by filing a motion for summary judgment, a motion which contemplates a broader scope to the court's legal inquiry into the legal sufficiency of a lawsuit. A party may move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that a judgment may be entered for a party as a matter of law when " the

pleadings, *the discovery and disclosure materials on file, and any affidavits* show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(emphasis added). Therefore, unlike a motion to dismiss, a motion for summary judgment expressly contemplates the court reviewing matters outside the pleadings when deciding whether "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988). Once the moving party has shown that there is an absence

of evidence to support the nonmoving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint. Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). The evidence must be viewed in the light most favorable to the nonmovant. See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322.

In considering motions to dismiss in cases involving *pro se* litigants like Mr. Walker, courts are also enjoined to exercise caution when weighing whether to treat a motion to dismiss like a summary judgment motion and consider matters outside the pleadings. Because conversion of a motion to dismiss into a summary judgment motion can present potentially severe procedural snares for *pro se* litigants, it is essential that *pro se* plaintiffs be provided adequate notice that matters outside the pleadings may be considered in disposing of a case. As the United States Court of Appeals for the Third Circuit has recently underscored when emphasizing the importance of such notice for *pro se* litigants: " 'it would be desirable in the interest

of clarity for an order to expressly notify the parties that the court was converting a motion to dismiss into one of summary judgment or that the ruling would be pursuant to Rule 56, . . . .' " Renchenski v. Williams, No. 07-3530, 2010 WL 3835217, *19 (3d Cir. Oct. 4, 2010)(citations omitted). Indeed, the court of appeals has specifically instructed us on the type of notice we should provide in these cases, stating that: " adequate notice in the *pro se* prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit." Id. at *20. To the extent that the current motion to dismiss in fact invites treatment as a summary judgment motion, it is undisputed that walker has not yet received any notice of the fact that the motion to dismiss might be converted to a summary judgment motion, notice that would be a prerequisite to further consideration of this matter.

> **B. Application of These Differing Legal Standards to Qualified Immunity Claims In Pro Se Cases**

The distinction between a motion to dismiss and a summary judgment motion can have particular significance in a case such as this where a defendant is attempting to assert a defense of qualified immunity. This significance derives from a tension between two principles.

At the outset, it is well-settled that:

> "[T]he qualified-immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (internal quotation marks, brackets, and citations omitted). An essential attribute of qualified immunity is the "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell [v. Forsyth], 472 U.S.[511, 526 (1985)]. The immunity is intended to protect officials from the potential consequences of suit, including distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service. Id. "[E]ven such pretrial matters as discovery are to be avoided if possible, as '[i]nquiries of this kind can be peculiarly disruptive of effective government.'" Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Thomas v. Independence Tp., 463 F.3d 285, 291 (3d Cir. 2006).

"Because qualified immunity bestows immunity from suit, the Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The Supreme Court has admonished that '[u]ntil this threshold immunity question is resolved, discovery should not be allowed.' Harlow, 457 U.S. at 818, 102 S.Ct. 2727. Thus, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" Thomas v. Independence Tp., 463 F.3d at 291.

Yet, while questions of qualified immunity should be resolved at the earliest possible stage of the litigation, it is also evident that some qualified immunity questions are fact-specific and require consideration of matters beyond the pleadings. Indeed, in many instances, "crucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)." Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996). Given the highly fact-specific nature of certain qualified immunity inquiries, some qualified immunity claims may not be readily amenable to resolution at the outset of a case on a motion to dismiss. In such instances:

> When presented with a complaint that does not lend itself to an early resolution of the qualified immunity issue, a district court has several options. First, a district court may order the plaintiff to reply to the defendant's answer pleading qualified immunity. Crawford-El [v. Britton], 523 U.S. 574, 598 (1998)]. Second, a district court may grant a defense motion for a more definite statement under Rule 12(e) with respect to the conduct of which the plaintiff complains. Id. The district court should avail itself of these options before addressing the immunity question, which sometimes requires complicated analysis of legal issues. Id. If the plaintiff's action survives these hurdles, the plaintiff ordinarily will be entitled to some discovery, but the district court may limit the timing, sequence, frequency, and extent of that discovery under Rule 26. Id. at 598-99. Beyond these procedural tools, summary judgment remains a useful tool for precluding insubstantial claims from proceeding to trial. Id. at 600.

Thomas v. Independence Tp., 463 F.3d at 301.

In our view, two of these options, which lie in the court's discretion, have only limited utility as a means for clarifying a *pro se* complaint, like Walker's amended complaint, which is challenged on qualified immunity grounds. When presented with a *pro se* plaintiff, directing that litigant to endeavor to respond to a qualified immunity claim by either requiring the plaintiff to: (1) reply to the defendant's answer pleading qualified immunity; or (2) granting a defense motion for a more definite statement under Rule 12(e) with respect to whether the defendants are entitled to qualified immunity with respect to the conduct of which the plaintiff complains may present legal challenges beyond the *pro se* party's skills. Therefore, with respect to such *pro se* litigants in many instances the most fair, and efficient, means of addressing qualified immunity issues which are not susceptible to quick resolution on a motion to dismiss may be the third option endorsed by the courts: through a prompt, and properly documented, summary judgment motion.

      **C.**    **The Defendants' Motion to Dismiss Should Be Denied Without Prejudice to the Filing of a Summary Judgment Motion Raising This Qualified Immunity Defense.**

In our view, these principles guide the course which should be followed in this case. In this instance, both Walker's *pro se* complaint, and the defendants' motion to dismiss on qualified immunity grounds, endeavor to characterize the state criminal proceedings that were brought against Walker, and rely upon competing excerpts from

those state court criminal proceedings– matters outside the pleadings–to support their disparate characterizations of that prior state criminal case. Thus, we are invited to make a fact-specific determination of qualified immunity in the procedural setting of a motion to dismiss where we are enjoined to refrain from looking beyond the pleadings.

While it may well be that the complete record of these state court criminal proceedings will reveal that "there is no genuine issue as to any material fact" concerning what transpired in these proceedings, making a summary judgment determination of this case feasible, we cannot reach this conclusion on the present fragmentary record of these prior proceedings set forth in this lawsuit. Nor do we feel that we can we properly consider these disputed descriptions of the state criminal proceedings in the context of a motion to dismiss under Rule 12(b)(6).[3] Finally, we

---

[3] While the Defendants invite us to consider these state court criminal matters citing, <u>Pension Ben. Guar. Corp. v. White Consol. Industries, Inc</u>., 998 F.2d 1192, 1196 (3d Cir. 1993) we believe that the scope of this exception to Rule 12's injunction that a motion to dismiss may only be decided on the pleadings is far more narrow than the Defendants urge. As we view it, <u>Pension</u> permits us to "consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record [along with] an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Id</u>. Here, while the competing and fragmentary state court records from Walker's criminal case provided by the parties thus far may be authentic, their meaning and significance for qualified immunity purposes is not indisputably clear, and would require further examination of matters beyond the pleadings.

feel that it would be inappropriate to unilaterally convert this motion to dismiss into a motion for summary judgment without further notice to the parties, and briefing by the parties. Renchenski v. Williams, No. 07-3530, 2010 WL 3835217, *19 (3d Cir. Oct. 4, 2010).

Since the qualified immunity issues raised in this case are not readily amenable to resolution on a motion to dismiss, but should be resolved "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991), it is recommended that this motion to dismiss be denied, but the Defendants be directed to file a properly documented motion for summary judgment within 60 days. Adopting this course enables the Court to swiftly reach the merits of this defense, while providing Walker with adequate notice that this claim will be addressed in a summary judgment setting, thus paying full fidelity to the Supreme Court's guidance regarding the "importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In the meanwhile, as the parties frame this issue for possible summary judgment resolution, it is further recommended that the Defendants' request for a stay of other proceedings in this case be granted. Such a stay is legally called for when a party like Defendant Holland is overseas serving in the United States armed forces. See 50 U.S.C. § 522. Furthermore, staying other discovery proceedings pending resolution

of any qualified immunity claim is also consistent with the Supreme Court's oft-stated view that, in addressing qualified immunity claims, "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense ... so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." Crawford-El, 523 U.S. at 597-98.[4]

### III. RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED as follows:

1. That the State Police Defendants' motion to dismiss (Doc. 24) be DENIED;

2. That the State Police Defendants be directed to file a properly documented motion for summary judgment relating to their qualified immunity claim within 60 days; and

3. That further proceedings be stayed pending the return of Defendant Holland from his military service overseas.

The parties are further placed on notice that pursuant to Local Rule 72.3:

---

[4] Because "the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense ... so that officials are not subjected to unnecessary and burdensome discovery" Crawford-El, 523 U.S. at 597-98, we must also decline Walker's suggestion that he be permitted to conduct full discovery before these pre-trial motions are addressed. (Doc. 31).

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of October, 2010.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge