## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES A. WALKER, | : | CIVIL NO. 4:10-CV-467 |
| | : | |
| **Plaintiff,** | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| BERNIE J. ZOOK, et al., | : | |
| | : | |
| **Defendants,** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

### A.    Introduction

This is a *pro se* civil rights action brought by James Walker, a man who was formerly charged in the Court of Common Pleas of Mifflin County with receiving stolen property and driving under the influence of alcohol. Walker's current civil rights complaint arises out of this state prosecution, which concluded in January 2009 with the dismissal of these state charges.

According to the well-pleaded facts set forth in his amended complaint, on March 3, 2008,  Walker was arrested by two Pennsylvania State troopers, Jason Holland and Timothy Marrone, and was charged with receiving stolen property and driving under the influence of alcohol. (Id.) When Walker was unable to post bail, he was taken into custody and held at the Mifflin County Prison while his case proceeded to court. (Id.) Walker's amended *pro se* complaint then describes a contentious 11-

month course of judicial proceedings in this state criminal case. These bitterly disputed proceedings included a preliminary hearing in which a magisterial district judge found probable cause and bound his case over for trial, as well as suppression hearings which ultimately led to the suppression of evidence, and dismissal of these state charges in January 2009. (Id.)

According to his amended complaint, in the course of these state criminal proceedings, Walker leveled accusations against virtually all participants in this legal process, alleging that witnesses and police testified falsely, claiming that courthouse staff were impeding his defense and asserting that various judges were biased against him. (Id.) With the dismissal of this state criminal case, these accusations, which defined Walker's criminal defense, now form the basis for his civil cause of action.

While Walker's 62-page amended complaint initially advanced a wide array of claims and causes of action against multiple defendants, through pre-trial litigation numerous claims, and parties, have been dismissed from this case. Thus, in its current form, Walker's amended complaint levels claims against two Pennsylvania State Police troopers, Troopers Holland and Marrone, alleging that the troopers violated his civil rights by falsely accusing and imprisoning him on these state charges. (Doc. 11.)

### B.    The State Investigation and Prosecution of James Walker

With respect to these last remaining defendants in this litigation, the pertinent facts are as follows: This case arises out of a state police investigation into the alleged theft and sale of stolen copper wiring to scrap dealers in Mifflin County. The state police investigation of this matter began on February 14, 2008, when police received a call from a Lewistown  man, Thomas Molek regarding what Molek regarded as suspicious activity on his property.(Doc. 42, ¶ 4.) Police responded to the call, and interviewed Molek regarding this suspicious activity. In the course of this interview, Molek reported that his daughter, Martina Lea Molek, and her boyfriend, James Walker, had recently been on his property, burning insulation and identifying information off of copper wiring. (Id.) Molek advised police that he suspected that Walker and his daughter had burned this copper wiring so they could sell the copper for scrap without the copper being readily traced. (Id.) Molek also escorted the troopers to the location on his property where Walker and Martina Molek has been seen burning this copper wiring. At this site police observed evidence of a recent fire, and recovered a partial UPC tag, of the type typically affixed to copper wiring, at the scene of this fire. (Id.)

The information reported by Thomas Molek had potential criminal investigative significance for Trooper Marrone, who knew from past experience that people who

steal copper wiring, or are in possession of stolen copper wire, frequently burn off the identifying coding on the wire in order to sell the remaining wire for scrap without that wire being identified as stolen. (Id., ¶ 5.) Acting on this information, on February 15, 2008, police began canvassing local scrap businesses to determine whether Walker had attempted to sell any scrap copper recently. (Id., ¶6.)

This follow-up investigation immediately developed additional information linking Walker to this suspicious activity when Trooper Holland spoke with representative of Pheasant Valley Recycling and was informed that a person matching Walker's description, but using the name "James Wagner," had recently sold copper wiring similar to the wire that Thomas Molek described to police one day earlier. According to the representatives of Pheasant Valley Recycling, the man who called himself  "Wagner" sold this copper wire one day earlier, on February 14, 2008, receiving $67.20 for 28 pounds of copper wire. Trooper Holland was also informed that the car driven by the man who called himself "Wagner" and sold this copper wire was a gold Toyota Camry with Pennsylvania plates FSK7346. Further investigation revealed that  this car was registered to James Walker. (Id.)

Trooper Holland then asked Pheasant Valley Recycling to pull any recorded images that it had of this transaction, as well as any history that it had relating to prior transactions with Walker, Wagner or Molek. In addition Trooper Holland requested that Pheasant Valley Recycling contact the state  police if Walker or "Wagner"

returned and attempted to cash in any other items. The recycling center was able to retrieve a video of this transaction. When police reviewed that video they found that it depicted a person matching Walker's description delivering burnt and stripped copper wire for scrap at Pheasant Valley Recycling. According to police, the video also revealed that this suspect entered and exited a car matching the vehicle registered to Walker. (Doc. 42, ¶6.)

Four days later, on February 19, 2008, there were three further developments in this state police investigation. First, on February 19, 2008, Pheasant Valley Recycling contacted the police and reported that the suspect who called himself "Jim Wagner" had returned to the recycling center and sold additional copper wire that was described as well casing wire, receiving $349.25 from the recycling center for this wire. (Id., ¶7.) At the same time, the original complainant, Thomas Molek reported that he had found additional evidence of wire burning on his property; specifically, he had discovered a pile of ashes on his macadam road that was similar to the pile of ashes he had previously found and reported to police. (Id., ¶8.) When police followed up on this report later during the day on February 19, 2008, they found black electrical wire casings, inscribed with the phrase "Weld-It" at the site of this recent fire. (Id., ¶9.)

Police then began a canvas of local electrical supply firms to determine whether any of these companies had experienced copper wires thefts. This inquiry yielded

immediate results. At the Tractor Supply outlet in Lewistown, police learned this store stocked "Weld-It" wire, but that some of its inventory of wire was missing. (Id., ¶10.) Police were also informed that, prior to the disappearance of this copper wire, a woman who was later identified as Walker's girlfriend, Martina Molek, was observed in the store with a man who matched Walker's description acting suspiciously. (Id.)

A second retailer, the Lowes Home Improvement Center located in Granville Township, Mifflin County, was also contacted and reported that a recent inventory revealed that it, too, had suffered significant store losses, consisting of two missing rolls of 10/3 gauge wire; two rolls of 10/3 wire; three rolls of 12/3 wire; and three rolls of 10/2 wire. (Id., ¶11.) The rolls observed at Molek's property matched the coloring of the rolls that were missing from the Lowes store, and the partial UPC that was found at the Molek burn site matched the coding of the wire missing from the Lowes store. (Id.)

As the investigation progressed police also confirmed that Walker's driver's license was suspended, and developed further evidence linking Walker to these copper wire thefts. Specifically, Trooper Holland and Marrone reviewed video still photographs from Pheasant Valley Recycling and observed that the man who had identified himself as "Wagner" had driven a 1995 gold four door Toyota Camry with Pennsylvania license plate FSK7346 to this facility. (Id., ¶13.) This vehicle was registered to Walker.

On March 3, 2008, police were contacted again by Pheasant Valley Recycling which reported that the man who called himself "Wagner" had just left the recycling center after selling 62 pounds of copper wire to the center for $170.50. (Id., ¶14.) Troopers Holland and Marrone then proceeded to Pheasant Valley Recycling, but while en route the police observed a vehicle matching the description of Walker's Toyota driving away from Pheasant Valley Recycling, and determined that the man driving the car appeared to be Walker.(Id., ¶¶15 and 16.) Accordingly, Troopers Marrone and Holland followed the car, confirming that the vehicle was, in fact, the automobile owned by Walker. Knowing that Walker's driver's license was suspended, police approached the automobile when it stopped at a local convenience store, detained Walker and confirmed that Walker was the driver of the car.(Id., ¶¶17 and 18.) Police recovered from Walker a receipt from Pheasant Valley Recycling, dated March 3, 2008, in the amount of $170.50, along with $170.00 in cash. Troopers Holland and Marrone also observed a spool of wire in the car behind the passenger seat. (Id., ¶19.)

In the course of this investigative stop, police observed that Walker appeared to be under the influence of a controlled substance. Police requested, and received, Walker's consent to conduct a blood test, which revealed 28 ng/mL of Morphine in his system, results which indicated heroin use, and 8 ng/mL of Delta-9 THC Carboxy Acid, in his bloodstream, a test result consistent which marijuana use. (Id., ¶¶20-22.)

Police then arrested Walker, impounded his car, and conducted an initial inventory search of the vehicle. (Id., ¶23.)  Two days later, on March 5, 2008, police obtained a search warrant to further search Walker's car. (Id., ¶24.) The issuance of this warrant reflected a finding of probable cause by the district magisterial judge. When police executed this search warrant they found and seized the following items from Walker's car: a Pheasant Valley Recycling receipt dated 2/26/08 payable to "James Wagner"; two rolls of 10-2 wire , each approximately 250 feet in length and both of which appeared to be new; a black stripped "weld-it" casing and a "weld-it" spool of the type used to display the cable in a retail environment; 10-2 electrical wire wrapping; and a utility knife. (Id., ¶25.)

A preliminary hearing was then conducted in Walker's case before Magisterial District Judge Clare, at which time the court found probable cause to believe that Walker had possessed stolen copper wiring and bound the case over for trial. In addition, in May 2008, police swore out a criminal complaint against Walker charging him with receiving stolen property and driving under the influence. Dissatisfied with the outcome of these preliminary proceedings, which had confirmed that police had probable cause to arrest him, Walker filed a petition for writ of habeas corpus in June of 2008, challenging the lawfulness of his arrest. On October 6, 2008, the Court of Common Pleas denied this Petition, expressly finding that there was probable cause to believe that Walker committed these offenses. (Doc. 42, Court Opinion, Exhibit 3.)

Subsequently, a suppression hearing was scheduled in this case in January of 2009. At the time of this hearing, the Commonwealth failed to present any witnesses.[1] In the absence of supporting proof the suppression motion was granted, a development which compelled the dismissal of these state criminal charges.

### C. The Federal Lawsuit and the Instant Summary Judgment Motion

This civil lawsuit then ensued. (Doc. 1.) While Walker initially advanced a wide array of claims and causes of action against multiple defendants, in its current form, Walker's sole remaining claims relate to two Pennsylvania State Police troopers, Troopers Holland and Marrone. As to these defendants, Walker alleges that the troopers violated his civil rights by falsely accusing and imprisoning him on these state charges. (Doc. 11.)

The defendants have now filed a summary judgment motion, alleging that they are entitled to qualified immunity on this false arrest/false imprisonment claim. This motion has been fully briefed by the parties, (Docs. 41-43, 45-46), and is ripe for resolution. For the reasons set forth below, it is recommended that this motion for summary judgment be granted.

---

[1] The parties dispute the reasons for this failure, with the defendants contending that they did not receive notice of the hearing, and Walker disputing this claim, but we find that the reasons for this failure of proof are not material to the resolution of this motion.

## II.   Discussion

### A.   Rule 56–The Legal Standard.

The defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers

Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force

to parties who attempt to rely upon hearsay statements to establish material issues of

fact which would preclude summary judgment. With respect to such claims, it is well-

settled that: "In this circuit, hearsay statements can be considered on a motion for

summary judgment [only] if they are capable of admission at trial." Shelton v.

University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000),

citing, Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d

Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment. Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); <u>Bouriez v. Carnegie Mellon Univ.</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); <u>Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.</u>, 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." <u>Thimons v. PNC Bank, NA</u>, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v. Temple Univ.</u>, 697 F.2d 90, 96 (3d Cir. 1982)."[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Furthermore, a party, like Marshall, who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be

tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade his litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure). Under the local rules, a party's failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added). Despite the clear language of the rule, the important purposes it serves, and the voluminous record in this case, [p]laintiff has not submitted the requisite counter-statement. All facts included in [d]efendant's statement must therefore be deemed admitted.

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).

### B.     Qualified Immunity and False Arrest Claims–Legal Standards

In this case, the defendants argue that Walker's complaint should be dismissed because these state troopers are entitled to qualified immunity from any liability for damages. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it

would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and confer qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)."). Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's

conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case the gist of Walker's remaining claims is that the defendants violated his constitutional rights through their unlawful arrest and malicious prosecution of the plaintiff. These claims implicate Walker's rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.   Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983. See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978).  However, in order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest.  Groman v. Twp. of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995). Similarly:

> To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)(emphasis added).

Thus, whether characterized as a false arrest, or couched in terms of malicious prosecution, proof that probable cause was lacking is essential to any §1983 claim arising out of the arrest and prosecution of an individual.  For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  An arrest by a police officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Although "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require "a belief of guilt that is reasonable as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Hill v.

California, 401 U.S. 797, 804 (1971)).  Probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  Wright, 409 F.3d at 602 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972)).  Accordingly, the evidentiary standard for probable cause is significantly lower than that required for conviction.  Id. (citing Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause requires only a "fair probability" that a person committed the relevant crime).  Because an arrest is made with probable cause if at the moment it was made the facts and circumstances within the officer's knowledge "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), the constitutional validity of an arrest does not turn on whether the suspect *actually* committed any crime, Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003). Thus,  "[t]he determination that probable cause exists is fundamentally a factual analysis that must be performed by officers at the scene.  It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed."  United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).  Although officers on the scene may draw inferences and make deductions that might elude an untrained person, United States v. Cortez, 449 U.S. 411, 418 (1981), "an officer's inferences and deductions can

-19-

only justify a warrantless arrest if the government satisfies its burden of establishing

the probable cause necessary to support the arrest," Myers, 308 F.3d at 255.

In this case, the actions taken by the state trooper defendants were affirmed by

the Pennsylvania courts on numerous occasions, which repeatedly found probable

cause existed both to charge Walker and to search his vehicle. Indeed, the record of

these state criminal proceedings reveals no less than four probable cause findings

made by the state courts in the course of this criminal case: (1) the probable cause

finding that supported the search warrant; (2) a separate problem cause finding when

the criminal complaint was sworn out and filed against Walker; (3) a probable cause

finding at the time of Walker's preliminary hearing; and (4) the probable cause

determination that was made by the state court in October 2008 when Walker's

petition for writ of habeas corpus was denied.

While these probable cause findings do not automatically confer qualified

immunity upon the defendants, police officers like these defendants whose probable

cause determinations also bear the imprimatur of the courts are often cloaked with

qualified immunity as a matter of law. See e.g., Wilson v. Russo, 212 F.3d 781 (3d

Cir. 2000); Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir. 1997). Indeed, in this setting

a plaintiff like Walker must meet an exacting standard to defeat a police officer's

claim of qualified immunity from damages. In the face of a judicial finding of probable

cause, "a plaintiff may succeed in a § 1983 action for false arrest [only] if the plaintiff

shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and  (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo,  212 F.3d 781, 786-87 (3d Cir. 2000).

### C.   The Defendants Are Entitled to Qualified Immunity

Judged against these benchmarks, we find that the defendants are entitled to qualified immunity on Walker's false arrest and malicious prosecution claims. With respect to these claims, the undisputed evidence shows that the police undertook their investigation after learning that Walker and his girlfriend may have been acquiring and selling copper wiring under suspicious circumstances. That investigation developed evidence that confirmed these allegations, corroborating Walker's possession and sale of copper wiring, which had been burned and stripped by identifying features by Walker, at a time when local vendors reported the theft and disappearance of identical copper wiring. Physical evidence recovered from suspected burn sites where police were informed that Walker and a co-conspirator had allegedly burned identifying features off of the wiring were consistent with features of the wiring reported stolen. Furthermore, Walker and his girlfriend were linked circumstantially to both the disappearance of this wiring, and to its subsequent sale to the Mifflin County recycling center. Moreover, Walker's use of an alias when engaging in this conduct, a fact which

was thoroughly documented by police, further corroborated and confirmed the furtive and illicit nature of this endeavor. When the investigation culminated on March 3, 2008 with Walker's detention, arrest, and the impounding of his car, police conducted an inventory search of the vehicle which identified further cause for suspicion. Such inventory searches are expressly authorized by law. Police then obtained a search warrant for the automobile and secured additional corroborating evidence in this criminal case.

While subsequent events resulted in the dismissal of these charges, that dismissal does not alter the fact that probable cause existed at the time of Walker's arrest. Moreover, Walker has not undermined these probable cause findings by showing: "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and  (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause' "Wilson v. Russo,  212 F.3d 781, 786-87 (3d Cir. 2000). Indeed, Walker's efforts to undermine these multiple probable cause findings are wholly unavailing, and consist of little more than a series of unsworn, uncorroborated assertions by Walker which challenge matters that are peripheral to the probable cause showing made here by the police. (Doc. 45.)

On balance, then, we find that the defendants are entitled to qualified immunity in this case since probable cause existed to charge Walker at the time of his arrest,

police officers presented their evidence to the state courts, and those court repeatedly concluded that there was probable cause to pursue these charges. Nor can Walker defeat this claim of qualified immunity by simply asserting, in a summary fashion, that there are disputed factual issues relating to the defendant's entitlement to this defense. It is well-settled that a party resisting a summary judgment motion may not defeat this motion by simply advancing cursory denials of these factual averments coupled with speculative and conclusory claims of wrongdoing. In such instances: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (Cir. Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark N.J. v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d. Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d. Cir. 1981)).

In this case, Walker's response to the summary judgment motion in this case consists of little more than denials of asserted facts, coupled with an attack on the credibility fo the defendants. These denials, and this invitation to discredit the defendants' affidavits, are inadequate in our view to create a material issue of fact which precludes summary judgment, particularly in light of the undisputed fact that the state court repeatedly found that police had probable cause in this case to charge Walker.

## IV.  **Recommendation**

For the foregoing reasons, IT IS RECOMMENDED THAT defendant's motion for summary judgment (Doc. 41) be granted.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22d day of June, 2011.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge